FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 19 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| ADRIANA Q. SUERO,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>Social Security,<br><br>        Defendant(s). | No. CV 06-7596-PA (AGR)<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |

    Pursuant 28 U.S.C. § 636, the Court has reviewed the entire file de novo, including the magistrate judge's Report and Recommendation. The Court agrees with the recommendation of the magistrate judge.

    IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner.

DATED: August 17, 2008

_____
PERCY ANDERSON
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| ADRIANA Q. SUERO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>　　　　　Defendant. | No. CV 06-7596-PA (AGR)<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

　　　The Court submits this Report and Recommendation to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be affirmed.

///
///
///
///
///
///

I.

## PROCEDURAL BACKGROUND

Plaintiff Adriana Q. Suero ("Suero") filed an application for Disability Insurance benefits on May 12, 1997. A.R. 56-58. The application was denied initially and on reconsideration. A.R. 28-29. Suero filed a request for hearing. A.R. 31. The Administrative Law Judge (ALJ) conducted a hearing on March 17, 1999. A.R. 277-353.

On April 28, 1999, the ALJ issued a partially favorable decision which found Suero disabled as of March 17, 1999, but not before that date. A.R. 203-212. Suero sought review with the Appeals Council. A.R. 213. On April 30, 2003, the Appeals Council vacated the decision and remanded to the ALJ for further proceedings. A.R. 219-222. The Appeals Council ordered the ALJ to: (1) clarify when Suero stopped working and her alleged disability onset date; (2) obtain updated medical records beginning July 1997; (3) further evaluate Suero's subjective complaints; (4) give further consideration to Suero's maximum residual functional capacity; and (5) if warranted by the expanded record, obtain supplemental evidence from a vocational expert. A.R. 221-222.

On remand, the ALJ held a pre-hearing conference on August 4, 2003. A.R. 354-378. The ALJ issued a pre-hearing order on August 6, 2003. A.R. 223-224. On December 8, 2004, the ALJ conducted a hearing. A.R. 379-414. On January 7, 2005, the ALJ issued a decision that was partially favorable and found Suero disabled as of November 28, 1999. A.R. 15-26. Suero sought review with the Appeals Council. A.R. 12. On September 25, 2006, the Appeals Council denied Suero's request for review and designated the ALJ's decision as the final decision of the Commissioner. A.R. 6-9.

Suero filed a complaint in this Court on November 29, 2006, pursuant to 42 U.S.C. § 405(g). On March 19, 2007, the case was reassigned to Magistrate Judge

///

///

Alicia G. Rosenberg.[1] The parties filed a Joint Stipulation on August 22, 2007, that addressed the disputed issues in the case. The Commissioner filed the certified administrative record ("AR"). The Court has taken the Joint Stipulation under submission without oral argument.

## II.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

## III.
## EVALUATION OF DISABILITY

"A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

///

---

[1] The assigned District Judge, Percy Anderson, remained the same.

national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

The ALJ found that Suero has "fibromyalgia and carpal tunnel syndrome." A.R. 24. The ALJ found that Suero's "current capacity to perform basic work-related activities is limited by an inability to: lift, carry, push or pull more than 10 pounds frequently or more than 20 pounds occasionally; sit six hours and stand or walk longer than six hours during an 8-hour workday; climb, balance, bend, stoop, kneel, squat, crouch, or crawl more than occasionally; and she is precluded from fine manipulation, striking actions, and power gripping/squeezing/grasping with the hands or fingers." *Id.* Suero is unable to perform her past relevant work. A.R. 25. The ALJ concluded that a significant number of jobs do not exist in the economy that Suero is capable of performing upon attaining age 55[2] on November 28, 1999. *Id.* Accordingly, Suero "was under a 'disability,' as defined in the Social Security Act, on November 28, 1999, but not prior thereto." *Id.*

Suero argues that (1) the ALJ erred in failing to find that Suero met a listed impairment during the period March 21, 1996 through November 27, 1999; (2) the ALJ erred in finding that there were a significant number of jobs that Suero could do prior to November 28, 1999; and (3) the ALJ's decision was not supported by substantial evidence.

### A.  Whether Suero Met or Equaled a Listed Impairment During the Period March 21, 1996 – November 27, 1999

Suero argues that she had medically determinable impairments of fibromyalgia and carpal tunnel syndrome and was, therefore, disabled. At step two of the sequential analysis,[3] the ALJ found that Suero had the severe impairments of fibromyalgia and

---

[2]  Age 55 is defined as "advanced age" under the regulations. 20 C.F.R. § 404.2(c)(4).

[3]  The Commissioner uses a five-step sequential analysis for evaluations of disability. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Suero was not engaged in substantial gainful activity after the onset date of March 21, 1996. A.R. 20.

carpal tunnel syndrome. A.R. 24. Given the ALJ's favorable finding at step two, the Court interprets Suero's arguments on the first disputed issue as an argument that the ALJ erred at step three of the sequential analysis. (To the extent Suero meant to attack the ALJ's findings at step four or step five, this Court will address those arguments below under the second and third disputed issues.)

At step three, the claimant bears the burden of demonstrating that Suero's impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(4)(iii), 416.920(4)(iii).

Fibromyalgia and carpal tunnel syndrome are not listed impairments. *See* Listing of Impairments, App. 1, subpart P, part 404. The issue, then, is whether Suero has satisfied her burden of demonstrating equivalence to a listed impairment during the period March 21, 1996 (the stipulated disability onset date, A.R. 20, 224) and the date on which the ALJ found her disabled (November 28, 1999). A.R. 25. "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. 404.1526.

Suero does not identify any analogous listed impairments to which she claims medical equivalence. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (claimant offered no theory as to how his impairments combined to equal a listed impairment). Suero cites an undated opinion from a treating internist in Chile who states that he has treated Suero since December 1999 and that Suero "is incapable of working." A.R.

5

268-270. Even assuming this opinion were sufficient to establish equivalence to a listing (and it is not), the opinion does not cover the requisite time frame of March 21, 1996 – November 27, 1999. The ALJ found Suero disabled as of November 28, 1999, the time frame covered by the Chilean internist. A.R. 25.

Suero did not submit an opinion from a medical source that she met or equaled a listed impairment during the period March 21, 1996 – November 27, 1999. She cites evidence that Suero was diagnosed with, and exhibited symptoms of, fibromyalgia and carpal tunnel syndrome during that time frame. Suero's argument is insufficient at step three. *Tackett*, 180 F.3d at 1100 ("[a] generalized assertion of functional problems is not enough to establish disability at step three").

By contrast, the ALJ's conclusion at step three that Suero's impairments did not meet or equal the criteria for a listed impairment was supported by substantial evidence. A.R. 20. The ALJ relied upon an examining physician opinion on July 15, 1997 and a non-examining physician opinion on August 12, 1997. A.R. 20, 136, 189-196. In addition, the medical expert testified that Suero did not meet or equal a listed impairment based on her medical records. A.R. 21, 386, 388-389, 396-397. The ALJ found that the medical records submitted on remand were not inconsistent with the opinions of the examining physician, nonexamining physician, and medical expert. A.R. 21; *Tackett*, 180 F.3d at 1100 (opinions by medical expert and examining physician constitute substantial evidence supporting ALJ's finding at step three).

B.  **Whether the ALJ Satisfied His Burden at Step Five During the Period March 21, 1996 – November 27, 1999**

At step five of the sequential analysis, the Commissioner bears the burden of demonstrating that there is other work in significant numbers in the national economy that the claimant can do. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is "disabled" and entitled to disability benefits. *Id.*

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.* "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Id.* at 1115 (citations omitted).

Suero argues that the ALJ failed to carry his burden during the period March 21, 1996 – November 27, 1999. The ALJ found that Suero has both exertional and non-exertional limitations. A.R. 24-25. Under *Lounsburry*, the ALJ was required to determine first whether Suero was disabled under the grids on the basis of her exertional limitations alone. *Lounsburry*, 468 F.3d at 1116. The ALJ determined that the grids "would direct a conclusion of 'disabled' upon her attainment of age 55" on November 28, 1999. A.R. 25. Therefore, the ALJ determined that Suero was under a disability on November 28, 1999. *Id.*

For the period prior to November 28, 1999, the ALJ determined that the grids "would direct a conclusion of 'not disabled' prior to her attainment of age 55." *Id.* Exclusive reliance on the grids is barred when the ALJ determines that the non-exertional limitations are "significant enough to limit further the range of work permitted by exertional limitations." *Lounsburry*, 468 F.3d at 1115. The ALJ determined that Suero's "non-exertional limitations do not allow her to perform the full range of light work." A.R. 25. Therefore, consistent with *Lounsburry*, the ALJ examined additional evidence.

The ALJ relied upon the vocational expert testimony at the March 17, 1999 hearing that identified the jobs of usher (2,700 jobs), counter clerk (4,800 jobs), and crossing guard (5,000 jobs) that Suero could perform given her limitations. A.R. 23, 25. Counsel stipulated to the expert's qualifications. A.R. 312; see A.R. 232-233 (resume).

Suero argues that the ALJ did not ask the vocational expert (VE) to explain any discrepancies between her testimony and the DOT. (Joint Stipulation at 13.) Recently, the Ninth Circuit addressed the question of "whether, in light of the requirements of SSR 00-4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1152, (9th Cir. 2007) (footnote omitted). The answer is no. *Id.* The Ninth Circuit concluded that the procedural requirements of SSR 00-4p require the ALJ to "first determine whether a conflict exists" between the DOT and the vocational expert's testimony, and "then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153.

The Ninth Circuit indicated, however, that remand is not necessary if the procedural error is harmless, *i.e.*, when there is no conflict or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts. *Id.* at 1154 n.19.

Although the ALJ in this case did not ask the vocational expert whether her testimony conflicted with the DOT, the ALJ found no evidence of inconsistency between the VE's testimony and the DOT. A.R. 23. Substantial evidence supports the ALJ's decision. The VE referenced the DOT in her testimony. A.R. 319-325, 329. Suero fails to identify a single conflict between the VE's testimony and the DOT. Under these circumstances, any error is harmless under *Massachi*, 486 F.3d at 1154 n.19.

Suero further argues that the ALJ did not ask the VE whether these jobs still existed in the same numbers and with the same requirements in 2005. (Joint Stipulation at 13.) Suero's argument is irrelevant to the issue before this Court. The ALJ found Suero disabled as of November 28, 1999. The only time frame at issue is March 21, 1996 through November 27, 1999. Accordingly, any changes in the job market after 1999 do not have any impact on the step five analysis.

///

Suero also argues that the VE testified, in response to a different hypothetical, that were no jobs that Suero could perform. (Joint Stipulation at 13.) However, the ALJ may rely on testimony a vocational expert gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ need not accept testimony in response to a hypothetical that contains restrictions the ALJ rejected. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989). The VE testimony cited by Suero was given in response to limitations that the ALJ did not accept during the period March 21, 1996 through November 27, 1999.

In addition, Suero argues that when the Appeals Council vacated the ALJ's decision of April 28, 1999, it also vacated the VE testimony at the 1999 hearing. (Joint Stipulation at 10.) There is nothing in the Appeals Council's Order of April 30, 2003 indicating that the VE's testimony was vacated, and Suero cites to nothing. A.R. 219-222. The ALJ was required to obtain supplemental evidence from a vocational expert only "[i]f warranted by the expanded record." A.R. 222. Suero does not identify any need for supplemental VE testimony. The Appeals Council denied review of the ALJ's decision dated January 7, 2005. A.R. 6.

C. **Whether the ALJ's Decision Is Supported by Substantial Evidence**

Suero argues that the ALJ is bound by his finding that she was disabled as of March 17, 1999 in his first decision dated April 28, 1999. The Appeals Council vacated that decision and specifically addressed the ALJ's finding of disability as of March 17, 1999. A.R. 219-222. The Appeals Council found that "[a]bsent evidence for over 1 and 1/2 years prior to the established onset date of March 17, 1999, the residual functional capacity as of that date and resulting finding of disability are **not supported**." A.R. 221 (emphasis added). Suero cites no authority for the proposition that the ALJ is bound by his prior findings under these circumstances and the Court has found none.

Suero argues that the ALJ erred in finding her partially credible. (Joint Stipulation at 14.) "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

Under the first prong of the credibility analysis, the ALJ found that there is medical evidence of underlying impairments that could reasonably explain Suero's symptoms. A.R. 21. However, under the second prong, the ALJ found that, after the March 17, 1999 hearing, "there are also adverse credibility factors." A.R. 22. The ALJ listed five factors: (1) Suero took at least two trips to Chile, which was inconsistent with her counsel's claim that Suero is unable to sit for more than 20-30 minutes at a time; (2) there is a sporadic treatment record without evidence of hospitalizations or aggressive treatment; (3) medical records submitted on remand noted that there were several improvements in 1997 and 1999, Suero's tender points were mild, and increased medication had some improvement in her condition, contradicting that Suero's testimony that she had difficulty lifting even a coffee cup during that time; (4) Suero failed to submit a pain questionnaire for the relevant time period; and (5) Suero
///

10

stipulated only to Dr. Lysiak as her treating physician and did not stipulate to her Chilean doctor. *Id.*; A.R. 223.

Of the five factors articulated by the ALJ, Suero challenges the first – the inconsistency between the ability to take two trips to Chile and Suero's claimed inability to sit for more than 20-30 minutes at a time. Suero argues that, on a plane, an individual can adjust the seat so that she is "almost lying down." (Joint Stipulation at 19.) Even assuming there is no evidence as to whether Suero flew to Chile without having to sit more than 20-30 minutes at a time, that is not a sufficient basis to overturn the ALJ's decision. In *Batson*, the ALJ assumed that if the claimant could watch television 6-10 hours per day, he could also sit six hours out of an eight-hour workday. The Ninth Circuit found that the "assumption that Batson watched television while sitting is not confirmed by the record." *Batson v. Commissioner of the Social Security Administration*, 359 F.3d 1190, 1197 (9th Cir. 2004). Nevertheless, the Ninth Circuit held that "[a]ny error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible." *Id.* (Citation omitted.)

Here, as in *Batson*, there is substantial evidence supporting the reasons the ALJ identified for finding Suero partially credible. Most significantly, the ALJ accurately summarized the medical records submitted on remand that were not in the record at the time of the March 17, 1999 hearing. There were several improvements in 1997 and 1999, Suero's tender points were mild, and increased medication resulted in improvement in her condition. A.R. 22, 147-148, 151, 168-170, 260, 261, 266. The ALJ noted that this evidence contradicted Suero's testimony that she had difficulty lifting even a coffee cup during that time.[4] A.R. 22, 295. In addition, the ALJ noted that the

---

[4] Suero testified at the March 17, 1999 hearing. Suero notified the ALJ that she was not going to appear at the December 8, 2004 hearing. A.R. 831.

treatment record on remand was sporadic without hospitalizations or aggressive treatment.[5] A.R. 22.

Suero argues that the ALJ erred in relying on the medical expert's (ME) testimony because his specialty was internal medicine and cardiology, and not orthopedics. (Joint Stipulation at 13.) Rheumatology, and not orthopedics, is the specialty for fibromyalgia. *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004). Although the opinion of a specialist is entitled to more weight than a physician who is not a specialist (20 C.F.R. § 404.1527(d)(5), (f)), the ALJ is not precluded from relying on a physician in internal medicine altogether. The ME testified that he has treated approximately a dozen fibromyalgia patients, with the most recent treatment four days prior to the hearing. A.R. 391, 394. In addition, the ME reviewed complete literature on close to one hundred fibromyalgia patients. A.R. 391.

The ME reviewed Suero's treating medical records during the relevant time frame, which include records from Suero's treating internist, Dr. Lysiak, and a report from a rheumatologist (A.R. 168-170). Consistent with the medical records, the ME testified that, during the relevant time frame, Suero had mild carpal tunnel syndrome and fibromyalgia that was not of the type that would preclude all work. A.R. 387, 388-391; *see* A.R. 262, 266 (diagnosis of mild carpal tunnel syndrome and nerve conduction studies in 1998); A.R. 151 (mild tender spots; fibromyalgia doing fairly well on current meds); A.R. 260-267. No treating physician opined, during the relevant time frame, that Suero's fibromyalgia and carpal tunnel syndrome was disabling. An examining physician (orthopedist) opined that Suero was capable of light work with additional limitations in 1997.[6] A.R. 138-143; *see also* A.R. 189-196 (state agency physician).

---

[5] The medical records on remand included A.R. 258-259 (9/99), 260-261 (7/99), 262 (8/98), 263 (1/98), 264-266 (12/97), 267 (9/97).

[6] Suero apparently told the examining physician, Dr. Dorsey, in July 1997 that she could not lift more than 25 pounds. A.R. 139. Suero argues that Dr. Dorsey's opinion would have been different if he had reviewed the treating medical records. (Joint Stipulation at 14.) Suero does

1 | The opinions of the ME and the examining physician constitute substantial evidence.
2 | See *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of examining
3 | physician may constitute substantial evidence when based on independent clinical
4 | findings; opinion of nonexamining physician may constitute substantial evidence when it
5 | is supported by, and is consistent with, other evidence in the record).
6 |     Again, Suero argues that her Chilean doctor found her incapable of working.
7 | However, the Chilean doctor states that he began treating Suero in December 1999, by
8 | which time the ALJ found Suero disabled. A.R. 25, 268-270.

### IV.
### CONCLUSION

IT IS RECOMMENDED that the Court issue an Order: (1) adopting this Report and Recommendation; and (2) affirming the decision of the Commissioner.

DATED: December 20, 2007

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

---

not support her argument by citation to anything in the medical records and does not explain how the treating medical records would have altered Dr. Dorsey's clinical findings based on his examination of Suero. Suero's argument is wholly speculative.